## COURT OF APPEALS.

In the Matter of the Attachment against the Estate of EZRA J. COATES and JOHN HILLIARD, non-resident debtors.

In proceedings, upon attachment against an absconding, concealed, or non-resident debtor, (2 *R. S.* 2, *Art.* 1,) *every creditor*, no matter where *resident* —whether in the United States or a foreign country—has a right to exhibit his claim to the trustees appointed under the act, and, upon having it allowed, to share in the distribution of the property. But foreign creditors cannot *initiate* these proceedings here.

Where a debtor in England has received a discharge in bankruptcy there, a creditor residing there, and who has received a dividend under those proceedings, cannot claim, under proceedings upon attachment against the same debtor here, a distribution of the property in the hands of the trustees, for the simple reason that the discharge in bankruptcy has *extinguished his debt.*

*March Term,* 1856.

ON the 6th of December, 1847, an attachment was issued against the property of Coates and Hilliard, non-resident debtors, pursuant to Part II, Chap. 5, Title I, of the Revised Statutes. Trustees were appointed under these proceedings, and notice was given to creditors to appear and prove their claims.

David Evans, a London creditor, presented his claim to the trustees, which was rejected by them on the ground that he was excluded from participation in the fund, because the absent debtors had been discharged under proceedings in bankruptcy in England, and under which the said David Evans had received a dividend. The supreme court reversed this decision, and the trustees appealed.

MANN & RODMAN, *for appellants.*
WEEKS & DE FOREST, *for respondent.*

By the court—JOHNSON, Judge. One main question in this case is, whether the trustees, appointed pursuant to the statute upon proceedings by attachment against absconding, concealed,

or non-resident debtors, are to distribute the funds which may come into their hands among all the creditors who establish their claims, or only among such as might have instituted or become parties to the attachment proceedings before the appointment of the trustees, if they had chosen to take the steps necessary for that purpose? As the right to institute such a proceeding, and the effect of it when instituted, and all the steps to be taken in the course of it depend upon standing authority, it is quite obvious that to the statute itself we must look to determine the question proposed.

In the Revised Statutes, several proceedings, all ending in the appointment of trustees of a debtor's property, and providing for its distribution, are grouped into a single title, consisting of eight articles. Article 1st, is " of attachments against absconding, concealed and non-resident debtors :" the 2d, " of attachments against debtors confined for crimes :" the 3d, " of voluntary assignments made pursuant to the application of an insolvent and his creditors :" the 4th, " of proceedings, by creditors, to compel assignments by debtors imprisoned on execution in civil cases :" the 5th, " of voluntary assignments by an insolvent for the purpose of exonerating his person from imprisonment ;" and the 6th, " of voluntary assignments by a debtor imprisoned on execution in civil cases." Those six are the several kinds of proceeding specified. The 7th article consists of general provisions applicable to proceedings under the several preceding articles, or some of them ; and the 8th treats of the powers, duties and obligations of trustees and assignees under this title. (2 *R. S.* 1.)

In proceedings under the first article, the debtor may, within a certain time, appear and have the attachment discharged, upon either paying those creditors who have procured the attachment, or who have made themselves parties to the proceeding under the provisions of the statute, or giving security to them in a prescribed manner. If he fail to do this, three or more persons are to be appointed " to be trustees for all the creditors of such debtor." (2 *R. S.* 12, § 58.)

By article 8, § 1, (2 *R. S.* 40,) all trustees appointed in pur-

suance of either of the preceding articles, are declared to be trustees of the estate of the debtor in relation to whose property they shall be appointed, for the benefit of his creditors, and are to have the powers and be subject to the obligations thereinafter declared. By § 7, *sub*. 8, (2 *R. S*. 42,) they have power "to settle all matters and accounts between such debtor and his debtors or creditors." By § 8, (2 *R. S*. 42,) they are required to give notice of their appointment, and therein to call upon all the creditors of such debtor to deliver their respective accounts and demands to the trustees by a day specified. They are, within fifteen months from their appointment, to call a general meeting of the creditors of such debtor, and at that meeting, or other adjourned meeting thereafter, "all accounts and demands, for and against the estate of such debtor, are to be fairly adjusted, as far as the same can be ascertained." (2 *R. S*. 46, §§ 27, 28.) They are then to proceed to pay debts due to the United States, and certain other specified preferred claims, and they are then to "distribute the residue of the moneys in their hands among all those who shall have exhibited their claims as creditors, and whose debts shall have been ascertained, in proportion to their respective demands, and without giving any preference to debts due on specialties, as follows :" in cases under the first article, " among those who were creditors at the time of the issuing of the first warrant of attachment;" (2 *R. S*. 46, § 33 ;) in cases under articles three and five, "among those who were creditors at the time of the execution of the assignment by the insolvent ;" in cases under the fourth article, "among those who were creditors" at one or the other of the two periods specified ; and in cases under the sixth article, "among those creditors at whose suit the debtor was imprisoned on execution at the time of his discharge."

The next section (§ 34) declares, that in making such distribution the trustees shall first pay all debts that may be owing by the debtor as guardian, executor, administrator, or trustee, and that these are to be *paid* in full ; or, if the assets are insufficient, then in proportion to their respective amounts.

Thus far the language of the act is in itself plain. It speaks

In the matter of Coates and Hilliard, &c.

of all creditors. It furnishes no rule of exclusion, nor does it even hint that any are to be excluded, whose debts are ascertained, and who have claimed as creditors. On the contrary, a strong inference that no such exclusion was intended is afforded by the contrast between the declared duties of the trustees under the sixth article and under the others. Under that article the distribution is among the creditors at whose suit the debtor was imprisoned. Under the other articles, the only way in which the generality of the term "creditors" is at all restrained, is by fixing the time at which they must have been creditors, to entitle them to share in the distribution. When the legislature has fixed but a single restriction, we should hesitate long before we venture to add another. Such a restriction is, however, sought to be imported from provisions contained in the first article.

The provisions referred to are those which furnish the right to institute proceedings by attachment, in cases of attachments against non-residents. The property of a non-resident debtor may be attached when he is indebted on contracts made within this state, or to a creditor residing within this state, although upon a contract made elsewhere. (2 R. S. 3, § 1, sub. 2.)

After an application has been made for such an attachment, any other creditor may petition to become an attaching creditor; (2 R. S. 8, §§ 37, 38;) and, after certain proceedings, is to be deemed an attaching creditor. And by another provision, (2 R. S. 36, § 9,) creditors residing out of this state, and within the United States, may petition, and unite in any petition, in the same manner as resident creditors.

Now, for the purposes of the argument, it may be granted, that when the non-resident is not indebted on a contract made within this state, no creditor, residing out of the United States, can either originate or become a party to the attachment proceeding. Taking this, which is the position of the appellants, to be so, the question is, whether it affords an inference strong enough to control the language of the portion of the statute which relates to the duties of the trustees.

Until the appointment of trustees, the proceeding is the pri-

vate, peculiar proceeding of the prosecuting creditor. He may settle with the debtor on such terms as he pleases, or he may discontinue merely because he chooses.

So, on the other hand, the non-resident may appear, and pay the prosecuting creditor, or give bond to answer his claim, and have the attachment discharged; and no creditor, who has neither attached nor applied to be deemed an attaching creditor, can interfere to prevent the discharge.

Two other sections of the act will aid us in arriving at a complete view of what I may call the whole legislative intent in the various provisions on the subject of the attachment proceedings. If the debtor die, or become insane, after the time limited for his appearance has expired, the proceedings are unaffected by his death: if he die, or become insane, before that time, the proceedings are stayed, and the property is to be delivered to his personal representatives, or to the committee of his estate. (2 *R. S.* 13, §§ 63, 64.)

The evil at which the whole statute is aimed was, that a debtor, while he had property within the state, was not liable to have it subjected to paying his debts while he was not within the reach of legal process, either by being non-resident, or concealed, or having absconded. The remedy devised was to constrain such a debtor to appear and answer to his creditors by attaching his property. If he yielded and appeared, then the end of the law was answered, and no further proceedings were requisite. If he did not appear, then the law took upon itself the administration of his property, substantially as if he were dead.

The section just referred to, giving the property to his personal representatives, and arresting the attachment proceedings, in case of the debtor's death, within the time limited for his appearance, strongly confirms this view. The whole act, so reviewed forms one consistent scheme; and the language of every part of it is allowed its full and natural force. The legislature might well refuse to interfere to produce this civil outlawry, except upon behalf of such creditors, or in respect to such claims as, in some sense, peculiarly demanded protection

In the matter of Coates and Hilliard, &c.

and enforcement at their hands, and they have accordingly limited the classes of persons and claims in behalf of which the proceeding can be commenced. But when commenced and carried on to the point at which the debtor's right to appear has ceased, they thought it more consonant with justice to ad-' minister the estate substantially as if the man were dead, than to give to particular prosecuting creditors the whole, or the prior benefit. Having adopted, in one class of administrations upon the estates of deceased persons, the general principle of equality among creditors, there is nothing strange or unreasonable to adopt substantially the same rules in other cases, where the necessity for administration arose from positive provisions of law, and not from natural causes.

I may, without impropriety, add, that the aims of the revisors, as expressed in their notes on this chapter, are entirely in harmony with those above expressed. (3 *R. S.*, 2d ed., 612, &c., 816, *note on* § 61; 624, *note on* §§ 39, 40.) In this last note the revisors refer to *the matter of Depuyster*, (5 *Cow.* 266,) in which an application on behalf of foreign creditors was resisted; but neither court nor counsel objected to their claim on the ground that they were foreign creditors. Having their attention thus called to the practice under the old act, it seems impossible that they should have used the general term creditors without any qualification in speaking of distribution, if they had not intended to preserve the distinction that existed under the old act, according to which foreign creditors might share in the distribution, though they could not initiate the proceedings. That this was the rule appears from the case above cited, and from *ex parte Schroeder*, (6 *Cow.* 603.)

I have, therefore, come to the conclusion that every creditor, no matter where resident, has a right to exhibit his claim to the trustees, and, upon having it allowed, to share in the distribution.

The attachment was issued December 16, 1847; the nonresident debtors were declared bankrupt in England December 28, 1847, and were discharged May 27, 1848, from their debts in the bankruptcy proceeding. On the 9th of October, 1848,

the trustees in the attachment proceeding were appointed, and on the 2d of December, 1848, the petitioners presented their claim to the trustees.   The petitioners show that they were creditors at the time of the issuing of the attachment; that they have proved their debt in the bankruptcy proceedings, and have received a dividend.   Upon these facts, the question is presented, whether these petitioners are not precluded from claiming as creditors under the attachment.   That they were creditors when the attachment was issued is clear.   The language of the section in respect to distribution is, that it is to be made among those who were creditors at the time of issuing the attachment. (2 *R. S. p.* 47, § 33, *sub.* 1.)

But this does not determine the question.   It means to ex-clude those who become creditors afterwards, not to affirm that all those who were then creditors should receive dividends irrespective of the question whether they continued to be cred-itors or not.   If this be not the construction, then even pay-ment would not prevent the paid creditor from sharing in the fund.   The language confirms the decision upon the old act in *the matter of Depuyster*, (5 *Cow.* 266,) where the point was raised whether one who had become a creditor after the issuing of the attachment could share in the fund.

In *Peck* agt. *Randall's trustees*, (1 *Johns.* 165,) the supreme court held, that the statute of limitations was a good bar to the claim of a creditor, which was not barred at the time of the issuing of the attachment, saying, that the trustees succeed to the rights of their principal, and consequently to his means of defence.

The question is then, I think, narrowed to this, whether the debt of Coates and Hilliard to their petitioners was extinguished by the discharge in bankruptcy.   Debtors and creditors were all subjects of Great Britain, and domiciled in England; the debt was English in its origin, and the creditors have received their dividend under the English bankruptcy.   Under such cir-cumstances, I am not aware that it has ever been denied, that a discharge of the debt was valid, and to be respected in all other countries. (*Story Con. Laws*, §§ 337, 338.)

No question is presented as to the effect of the foreign law upon property here, but simply whether the debt is extinguished between the parties.

It follows, that the petitioners were not entitled to participate in the fund in the hands of the trustees, and that the order of the general term should be reversed, and that of the special term affirmed.